**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| GEORGE X, | ) | |
|    Plaintiff, | ) | |
| | ) | |
|   v. | ) | C.A. No.: N24C-10-237 FJJ |
| | ) | |
| PAUL H. MORRILL, JR., | ) | |
| THOMAS J. PARAG, DAVID L. | ) | |
| BAYLOR, SHANE MILLER, and | ) | |
| WILLIAM J. RHODUNDA, JR., | ) | |
|    Defendants. | ) | |
|   -And- | ) | |
| | ) | |
| PAUL L. PARETS and | ) | |
| THOMAS PARAG, | ) | |
|   Counterclaim Plaintiffs/ | ) | |
|   Third-Party Plaintiffs, | ) | |
|   v. | ) | |
| GEORGE X, | ) | |
|   Counterclaim Defendant, | ) | |
|   -And- | ) | |
| | ) | |
| ZEP TEPI INSTITUTE, INC., | ) | |
|   Third-Party Defendant. | ) | |

Submitted: June 22, 2026
Decided: June 25, 2026

## ORDER

*Upon Consideration of Plaintiff's Motion for Reargument*

## DENIED

This 25th day of June, 2026, upon consideration of Plaintiff's Motion for Reargument of the Court's June 17, 2026 Opinion and Order, it appears to the Court that:

1. In connection with his suit against Thomas Parag, Plaintiff's Fourth amended complaint stated claims against three Delaware City officials ("City Defendants"), in both their personal and official capacity, for the actions they allegedly did not take related to the construction of a basketball hoop on a right-of-way owned by Delaware City.[1] On May 8, 2026, the three City Defendants moved for summary judgment for the claims against them on the grounds of immunity.[2] The Court granted Defendants' Motion for Summary Judgment in an opinion dated June 17, 2026.[3] The Court determined that the actions of the City Defendants were discretionary, not ministerial, and were, therefore, entitled to immunity under 10 *Del. C.* §4011 because Plaintiff had not presented sufficient proof that their discretionary actions were done in bad faith, were grossly negligent, done wilfully or wantonly, or maliciously.

2. On June 22, 2026, Plaintiff filed his Motion for Reargument[4] and a corresponding Supplement.[5]

---

[1] Docket Item ("D.I.") 111, at 4-6. However, at oral argument on August 27, 2025, Plaintiff agreed he was suing them solely in their official capacity. Oral Argument recording of August 27, 2025 – 11:08 – 11:10 am.
[2] D.I. 441. The Amended Motion was filed on May 13, 2026. D.I. 448.
[3] D.I. 450.
[4] D.I. 510.
[5] D.I. 514.

3. The Court will only grant reargument when it has overlooked controlling precedent or legal principles, or misapprehended the law or facts in a way that would have changed the outcome of the underlying decision.[6] Reargument is not an opportunity for a party to revisit arguments already decided by the Court,[7] nor is it "the appropriate tool to raise a new argument."[8]

4. Plaintiff takes issue with this Court's decision that the City Defendants' actions were discretionary rather than ministerial. In his motion, Plaintiff points to *Sussex Cnty., Del. v. Morris*[9] for the assertion that the Court misunderstood and misapplied the discretionary v. ministerial distinction. Specifically, Plaintiff argues this Court interpreted discretionary actions too broadly considering the Supreme Court's clarification that "[t]he immunity granted to discretionary acts does not extend to every circumstance in which some element of choice is involved. Were that the case, virtually every act would be considered discretionary since there are few that do not involve some element of choice."[10] However, if one were to read further into the *Morris* decision, they would find the Supreme Court has "recognized that the term 'discretionary governmental functions' extends beyond mere policy

---

[6] *See Peters ex rel. Peters v. Texas Instruments, Inc.*, 2012 WL 1622396, at *1 (Del. Super. May 7, 2012), *aff'd*, 58 A.3d 414 (Del. 2013), as revised (Jan. 9, 2013).

[7] *See id.*

[8] *Bertola v. Fisher-Price, Inc.*, 336 A.3d 1288, 1289 (Del. Super. Ct. 2025) (citing *Aranda v. Philip Morris USA Inc.*, 183 A.3d 1245, 1255 (Del. 2018)).

[9] *Sussex Cnty., Del. v. Morris*, 610 A.2d 1354, 1358-59 (Del. 1992).

[10] *Id.* at 1358.

decisions to include 'the manner or method selected by governmental employees to discharge the police power.'"[11]

5. Plaintiff insists that there were duties the City Defendant's did not fulfill. He points to Delaware City Charter §§7-01, 9-04, and 12-01, and to Delaware City Code Chapters 52-53.

6. Delaware City Charter §9-04 outlines the duties and responsibilities of the Delaware City City Manager. In this case, that would be City Defendant David Baylor. The relevant duties prescribed in the is section include: 1) ensuring laws and ordinances are faithfully executed "subject to [his] enforcement;" and 2) "charge and supervision of the streets, gutters, curbs, sidewalks, boardwalks, jetties, piers, parks and other administrative affairs of the City and all work relating thereto."[12] Specifically, Plaintiff maintains that, as city manager, the decision not to take further action in connection with the right of way obstruction was not permitted given the outlined duties.

7. As to Delaware City Code Enforcement Officer Shane Miller, Plaintiff highlights Delaware City Code Chapters 52 and 53. Chapter 53-4 states in relevant part the code enforcement officer shall: 1) "devote reasonable time to the duties of [their] office;" 2) "receive, investigate, and enforce property maintenance and other

---

[11] *Id.* at 1359 (citing *Sadler v. New Castle County*, 565 A.2d 917, at 922 (Del. 1989).
[12] Del. City Charter §9-04.

4

building complaints and shall investigate, remedy, and prosecute building and property maintenance violations;" 3) "examine premises subject to the Delaware City Code and shall make necessary inspections for compliance with applicable law;" 4) "enforce applicable non-construction provisions of the building code;" and 5) "keep comprehensive records of complaints received, of inspections made, or reports rendered, and of notices or orders issued" for a period of five years.[13] Plaintiff notes that chapter 52 authorizes notice and allows for civil, criminal and administrative enforcement. Specifically, it is Plaintiff's position that Miller failed his duties by not taking further action as to the obstruction in the right of way.

8. As to City Defendant William Rhodunda, the Delaware City Solicitor, Plaintiff asserts his actions did not comport with Delaware City Charter §7-01. The Charter requires the City Solicitor to act as legal counsel for "Mayor and Council, the City Manager, department heads and other officers of the City, and to all City departments, offices or agencies."[14] Specifically, Plaintiff argues Rhodunda did not fulfill his duties because he did not advise City Defendants Baylor and Miller to take further action concerning the right of way obstruction. Plaintiff also cites §12-07, which requires the City Solicitor to represent Delaware City Officials, absent some exceptions.

---

[13] Del. City Code, Chapter 53-4.
[14] Del. City Charter §7-01.

9. Plaintiff then goes on to summarize there are 24 duties which he claims City Defendants were required to perform and lists the 17 this Court "collapsed" into "one generalized 'investigation.'"[15] In totality, Plaintiff asserts that the lack of action taken by all three City Defendants "supports a reasonable inference of notice, authority, non-enforcement, ratification, and continuing harm."[16]

10. The affidavit submitted by City Defendant David Baylor, then Town Manager of Delaware City, contains the following explanation of how the City Defendants discharged their police power:

> 6. Although I was informed that Mr. X's complaint related to what X referred to as a "basketball court," upon my arrival at Mr. X's property, I observed that what he was calling a "basketball court' was, in reality, a metal pole in the ground with a backboard, rim and net attached at the top (hereinafter, the "basketball structure"). …
>
> 8. **Following my discussion with Mr. X, and my visual observation of the basketball structure and where it was installed** relative to what appeared to be Mr. Parag's and Mr. X's respective property boundaries, I told Mr. X that I would be back in touch with him after speaking with Mr. Parag and after Delaware City's investigation had been concluded. …
>
> 10. Upon inspecting the two (2) properties - which are immediately adjacent to, and touching, one another, I came to the initial conclusion that it appeared more likely that the basketball structure was located on Mr. Parag's land rather than on Mr. X's property. In this regard, a large telephone pole was located in between Mr. X's property

---

[15] Plaintiff's Supplemental Brief, D.I. 514, at 21-24.
[16] Plaintiff's Supplemental Brief, D.I. 514, at 19.

and Mr. Parag's property and the basketball structure appeared to be approximately four or five feet from the electrical pole, toward Mr. Parag's property… The basketball structure had been located to the left of the pole if one were standing on the street, looking toward the properties. …

12. In light of the fact that these two (2) adjoining neighbors had expressed diametrically opposite positions concerning who owned the land where the basketball structure had been erected, **I asked (then) Code Enforcement Officer Shane Miller (hereinafter, "Mr. Miller") to please inspect the two (2) adjoining properties, as well as the basketball structure violated any provision of the Code of the City of Delaware City and/or whether the issue Mr. X raised was a matter the City of Delaware City should be concerned about.** Mr. Miller indicated that he understood the situation and that he would report back to me concerning his observations and findings.

13. **After inspecting the properties, Mr. Miller informed me that he did not find there to be any violations of the Code of Delaware City** insofar as the basketball structure did not appear to him to be located on property owned by Delaware City and also that, **even if it was located on Delaware City property, the basketball structure was not a major concern to Code Enforcement.**

14. **Based upon my observations, discussions with the parties, and my conversation with Mr. Miller, I did not believe Mr. X's complaint involved a violation of any specific provision of the Code of the City of Delaware City. Nor was I of the opinion that Mr. X's complaint was of particular concern to the Delaware City Government.** Instead, this seemed to me a dispute amount or between adjoining landowners and was, therefore, civil in nature.

15. As a result of my beliefs, I verbally informed Mr. X that, if he believed Mr. Parag was encroaching upon his property, he should order a survey and perhaps file a civil suit against Mr. Parag. I also indicated to Mr. X that, if he believed Mr. Parag was committing criminal trespass upon Mr. X's property, Mr. X would do well to call the police.

16. Thereafter, the same day (July 13, 2023), **I sent Mr. X an email to confirm my earlier conversation with him.** The email stated the following:

> I have reviewed your complaint. The issue that you have outlined is not a city issue. This would be considered a property rights issue and therefore it is civil in nature. The proper authority over matters such as you[s] would be to file a civil complaint in the Magistrate Court System. As you are aware, I am not an attorney and therefore cannot give you legal advice, if you have any questions regarding the legality of your situation, I would urge you to contact an attorney.
>
> I have included our City Solicitor on this email. Should you contact a lawyer, and have any legal questions involving the city of Delaware City, please have your attorney contact the City Solicitor.

17. **Mr. Miller separately wrote to Mr. X on July 17, 2023 and expressed his findings in an email** which stated, as follows:

> I have reviewed your complaint regarding the basketball hoop that was installed on your property. I spoke to David Baylor [who] advised me that he reached out to you to notify you that this is a civil matter. Code Enforcement has no authority to have the basketball hoop removed from your property. I am sorry that I cannot be of more help. Any other questions let me know.

18. **Following the emails from Mr. Miller and from me, neither of us heard from Mr. X again regarding this matter, and we were not asked by anyone to conduct any follow-up investigation** or to otherwise involve ourselves or anyone else employed by the City of Delaware City in this matter. … [17]

11. The affidavits by all three City Defendants make it clear that at least two city officials visited the site at issue, discussed the issue with both Plaintiff and Mr. Parag, and researched the property lines of the two men. That investigation concluded the city did not view the physical intrusion as an issue that warranted further action. Whether the investigation was complete is not the issue; the issue is whether some investigation was done. Thus, the Court was, and still is, satisfied that there was some investigation taken by City Defendants. As such, the acts are considered discretionary. Plaintiff has presented no meaningful challenge that the discretionary actions of the City Defendants fall within any exception to immunity under the Act. To be clear, Plaintiff has presented no evidence of bad faith, gross negligence, wilful, wanton, or malicious conduct on the part of any the City Defendants.

12. Furthermore, the Court's decision aligns with *Greenfield as Next Friend for Ford v. Miles*.[18] There, the court specifically held the failure to conduct an investigation would constitute the failure to fulfill a ministerial duty, while

---

[17] Affidavit of David L. Baylor, D.I. 239 (emphasis added).
[18] *Greenfield as Next Friend for Ford v. Miles*, 211 A.3d 1087 (Del. 2019).

completing an investigation, even if done poorly, is "quintessentially discretionary."[19] Although the underlying investigation may not surround the same subject matter, Plaintiff fails to appreciate the similarities in the issues presently before the Court.

13. As to the 17 duties outlined by Plaintiff, the Court carefully examined the record, including the three affidavits of City Defendants, and the Court is satisfied that each requirement was satisfied by at least one City Defendant. Whether these actions were reasonable in fulfilling these duties is not the inquiry to determine whether their actions were ministerial or discretionary. The City Defendants' conducted an investigation and acted. Once conducted, their actions are as a matter of law discretionary. If the investigation was flawed or not complete, it does not subject the City Defendants to liability absent evidence of bad faith, gross negligence, wilful, wanton or malicious conduct on the party of the City Defendants. There is simply no factual basis to find that the exceptions to immunity apply. As stated in *Greenfield*, "a duty is discretionary if and only if the state actor faced a range of reasonable choices while performing those duties."[20] Questioning the City Defendants' decision not to take further action is inherently discretionary.

---

[19] *Id.* at 1100-01.
[20] *Id.* at 1099.

10

14. Because Plaintiff has not submitted evidence refuting the finding that the City Defendants did not act in bad faith, were grossly or wantonly negligent, or acted willfully or maliciously, Plaintiff cannot sustain his burden to establish an exception to immunity for the City Defendants' discretionary actions.

15. Plaintiff also maintains the Court had a factual misunderstanding of the case as it relates to the remnants of the physical obstruction at issue. The Court reviewed the photograph exhibits depicting the obstruction attached as a part of the Motion for Reargument.[21] These documents, while helpful, confirmed that this Court appreciated the scope of the intrusion at the time it rendered its June 17 opinion. The Court is aware that there is a factual dispute as to how much, if any, of the ground was disturbed by the installation of the hoop. The amount the ground was disturbed had no impact on this Court's immunity analysis. Therefore, the Court did not meaningfully misapprehend the facts.

16. In his supplemental motion, Plaintiff raised certain arguments as to trespass, evidence of damages and easement rights. The Court denies any attempt by Plaintiff to reargue these issues. In an attempt to once again clarify the state of the record, the Court notes:

---

[21] D.I. 493, 494, 505.

a. The Court agrees that Delaware trespass law does not require proof of consequential damages, but where, as here, the plaintiff has alleged consequential damages, they must be proved;

b. This Court has said more than once that Plaintiff has a right to use the Delaware City right of way. Whether there was an impact on Plaintiff's use of the right of way is a jury question;

c. This Court agrees that the question of liability and damages are separate questions. It has made that statement repeatedly both in writing and in person during court proceedings;

d. The Court agrees that the August 8, 2023 letter from Plaintiff to Mayor Johnson goes not to the question of liability, but to damages;

e. Why the "shutdown" of Plaintiff's business occurred is a question of fact for the jury;

f. Whether the DVR, H.O.M.E., Business Plan, Feasibility Report and Licensing records support the damage claim is a question for the jury;

g. As stated previously in this order, the Court was well aware of Plaintiff's claims as to the extent of the encroachment and the Court's decision assumed that Plaintiff's position on the extent of the alleged encroachment was correct. Again, the extent of the encroachment is a question for the jury;

12

h. In finding that the City Defendants were entitled to immunity, the Court was well aware of the role each City Defendant had in Delaware City's governance and their actions or inactions in the instant investigation.

17. The Court is satisfied that it did not misapply or misapprehend the law and facts in a way that would have meaningfully impacted the outcome of the underlying decision. Reargument is accordingly **DENIED**.

**IT IS SO ORDERED**.

*/s/ Francis J. Jones, Jr.*
Francis J. Jones, Jr., Judge

cc: *Counsel via File & ServeXpress*